UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-61236-ALTONAGA/STRAUSS

**TONYA LARUE,**

    Plaintiff,

v.

**KILOLO KIJAKAZI,**
Acting Commissioner of Social Security,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**[1]

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [DE 20] and Defendant's Cross-Motion for Summary Judgment and Answer Brief ("Defendant's Motion") [DE 21].  I have reviewed both motions, Plaintiff's Reply Brief [DE 22], the administrative record [DE 15], and all other filings in this case.  For the reasons discussed herein, I respectfully **RECOMMEND** that Plaintiff's Motion [DE 20] be **GRANTED** and that Defendant's Motion [DE 21] be **DENIED**.

**I.      BACKGROUND & PROCEDURAL HISTORY**

On July 5, 2019, Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI").  Tr. 24, 181, 182, 213, 214.[2]  She initially alleged a disability onset date of December 30, 2013 but later amended that date to March 23, 2018 ("AOD").  Tr. 16, 158, 218, 424.  Plaintiff, who was born in 1961, was 57 years old on the AOD.

---

[1] This case has been referred to me for a Report and Recommendation on any dispositive matters [DE 5].

[2] In citing to the administrative record, I use the pagination in the lower right-hand corner of each page.  For example, Tr. 1 refers to CM/ECF page 6 of 746, Tr. 24 refers to CM/ECF page 29 of 746, and Tr. 214 refers to CM/ECF page 219 of 746.

She alleged disability on account of pain in her right hip, right knee, and lower back. Tr. 461. Plaintiff's claims were denied initially and upon reconsideration. Tr. 181, 182, 213, 214. On January 26, 2021, Plaintiff appeared with counsel at a telephonic hearing before an Administrative Law Judge ("ALJ"). Tr. 141-75. On February 6, 2021, the ALJ issued a fully favorable decision, finding that Plaintiff had been disabled since the AOD. Tr. 218-21. However, the Appeals Council decided *sua sponte* to review that decision, Tr. 387-94, and on May 17, 2021, the Appeals Council vacated the decision and remanded the matter to an ALJ for further proceedings. Tr. 224-32.

On September 15, 2021, Plaintiff appeared with counsel at a telephonic hearing before a different ALJ; a vocational expert ("VE") also appeared and testified at the hearing. Tr. 32-56. On October 12, 2021, the ALJ issued her decision, finding that Plaintiff became disabled on August 3, 2020, Plaintiff's established onset date ("EOD"). Tr. 16-25. Because the ALJ found that Plaintiff was not disabled prior to that date, the ALJ's decision was only partially favorable – it was favorable for Plaintiff's SSI claim but not Plaintiff's DIB claim.[3] On April 27, 2022, the Appeals Council denied Plaintiff's request for review, thereby leaving the ALJ's decision as the final decision of the Commissioner. Tr. 1-3. Consequently, on June 28, 2022, Plaintiff filed this action seeking judicial review of the Commissioner's decision.

The following chart summarizes three dates/terms used throughout this Report:

| Alleged Onset Date (as amended) ("AOD") | March 23, 2018 |
| Date Last Insured ("DLI") | September 30, 2018 |
| Established Onset Date (as determined by ALJ) ("EOD") | August 3, 2020 |

---

[3] To succeed on her DIB claim, Plaintiff was required to establish disability prior to her date last insured ("DLI"). *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Here, the ALJ found that Plaintiff's DLI was September 30, 2018. Tr. 17, 19. Neither party disputes the DLI determined by the ALJ. Because the ALJ determined that Plaintiff was not disabled prior to her DLI and that she only became disabled on the later EOD, the ALJ's decision was unfavorable for Plaintiff's DIB claim.

2

## II.   STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Id.* (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239. In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## III.   DISCUSSION

### A. THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical

findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history." *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)); *see also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. §§ 404.1520 and 416.920. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Regulations define RFC as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This determination takes into account "all of the relevant medical

4

and other evidence," including the claimant's own testimony and the observations of others. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five. "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.* At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. *See* 20 C.F.R. pt. 404, subpt. P, app. 2. The guidelines may apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work." 20 C.F.R. §§ 404.1569, 416.969. The guidelines are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule." 20 C.F.R. §§ 404.1569, 416.969. Therefore, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (citation omitted); *see also Walker*, 826 F.2d at 1002-03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC. *Hargis*, 945 F.2d at 1490. However, the Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate. *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla. 2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003). A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing. *Id.* (citing *Walker*, 889 F.2d at 50).

### B. ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION

After considering the evidence, the ALJ found that Plaintiff was not disabled prior to her DLI but that Plaintiff did become disabled beginning on the EOD. Tr. 24. Initially, the ALJ addressed certain preliminary issues and outlined in detail the five steps of the sequential evaluation. Tr. 16-18. Then, addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the AOD. Tr. 19.

Next, at step two, the ALJ found that Plaintiff had the severe impairments of bilateral hip osteoarthritis and lumbar spine disorders since the AOD. Tr. 19. In addition to these impairments, the ALJ found that, beginning on the EOD, Plaintiff also had the severe impairments of "right

shoulder acromioclavicular and glenohumeral degenerative change and mild tricompartmental degenerative change and osteopenia in the right knee." Tr. 19. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19.

The ALJ next assessed Plaintiff's RFC, determining Plaintiff's RFC both prior to and beginning on the EOD. Prior to the EOD, the ALJ found that Plaintiff had the RFC "to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)." Tr. 19. However, the ALJ assessed a more restrictive RFC as of the EOD. Beginning on the EOD, the ALJ found that Plaintiff had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can never climb ladders, ropes, or scaffolds, occasionally climb ramps and stairs, occasionally stoop, kneel, crouch, and crawl, and requires the use of a cane to ambulate." Tr. 22. Thus, for Plaintiff's post-EOD RFC, the ALJ reduced Plaintiff's RFC from light work to sedentary work, added postural limitations, and added the cane requirement.

After assessing Plaintiff's RFC, the ALJ found that Plaintiff was capable of performing her past relevant work as an apartment/house manager and property manager prior to the EOD but that Plaintiff was no longer capable of performing such work beginning on the EOD. Tr. 23. That is because Plaintiff's past relevant work requires light exertion level work, which the ALJ found Plaintiff was only capable of performing prior to the EOD. Tr. 23. Based on the ALJ's finding that Plaintiff could perform her past relevant work prior to the EOD (and thus following Plaintiff's DLI), the ALJ found that Plaintiff was not disabled as of her DLI. *See* Tr. 23-24. However, because the ALJ found that Plaintiff could not perform her past relevant work beginning on the EOD, the ALJ proceeded to step five of the sequential evaluation to determine whether Plaintiff was capable of performing other work. Tr. 23-24. In doing so, the ALJ considered Plaintiff's age,

education, work experience, and RFC, ultimately concluding that there are no jobs existing in significant numbers in the national economy that Plaintiff could perform (since her EOD). Therefore, the ALJ found that Plaintiff became disabled beginning on the EOD.  Tr. 24.

### C. ANALYSIS

Plaintiff contends that that this case should be remanded for three reasons: (1) the ALJ failed to evaluate opinion evidence from a consultative examiner, Dr. Marie Adam, in accordance with the regulations governing the evaluation of medical opinions; (2) the ALJ's RFC determination for the period between the AOD and EOD is not supported by substantial evidence; and (3) the ALJ's analysis regarding Plaintiff's subjective symptoms prior to the EOD is not supported by substantial evidence.  For the reasons discussed herein, I agree with Plaintiff that remand is warranted for further proceedings.[4]

**1. Evaluation of Opinion Evidence**

An ALJ is required to articulate in her decision how persuasive she finds the medical opinions and prior administrative medical findings in the record to be.  20 C.F.R. §§ 404.1520c(b), 416.920c(b).  The ALJ must evaluate the persuasiveness of medical opinions and prior administrative medical findings based upon five factors: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) 'other factors that tend to support or contradict' the opinion" or finding.  *Walker v. Soc. Sec. Admin., Comm'r*, No. 21-12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)).  Supportability

---

[4] I do not separately discuss Plaintiff's subjective symptom argument because that argument largely turns on the outcome of Plaintiff's argument regarding the ALJ's RFC assessment.  As discussed in section 2 below, the ALJ's RFC assessment is deficient and hampers the ability to conduct a meaningful review.  Because an ALJ will need to reassess Plaintiff's RFC on remand, the subjective symptom inquiry will need to be conducted again given that it is part and parcel of the RFC assessment.

8

and consistency are the most important factors; therefore, the ALJ must explain in her decision how she considered these two factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Plaintiff contends that the ALJ erred in failing to address the persuasiveness, consistency, and supportability of Dr. Adam's opinion in accordance with the regulations governing the evaluation of opinion evidence. Defendant does not dispute that the ALJ did not address the persuasiveness, consistency, or supportability of any opinion from Dr. Adam. Instead, Defendant disputes that Dr. Adam provided any medical opinion at all. Thus, whether the ALJ erred here turns on whether Dr. Adam provided a "medical opinion."

A "medical opinion" is defined as "a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she] ha[s] one or more impairment-related limitations or restrictions in the" ability to: (i) "perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions"; (ii) perform mental demands of work activities; (iii) perform other work demands (*e.g.*, using senses such as seeing or hearing); and/or (iv) adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

Here, Dr. Adam performed a consultative examination of Plaintiff on August 3, 2020. *See* Tr. 636-42. In her report, Dr. Adam found, *inter alia*, that

> The seated straight leg raise tests were positive bilaterally at 10 degrees due to back pain. The patient declined to do heel and toe walking. She was unable to get on and off [of] the exam table. The gait was antalgic. She was using a cane as an assistive device. The cane is medical necessity [sic] for short and long distance walking.

Tr. 638. Dr. Adam also found that Plaintiff has reduced strength in certain extremities. Tr. 638. According to Defendant, "the only 'opinion' Plaintiff points to are Dr. Adam's examination findings that Plaintiff had reduced strength, difficulty getting on and off the table and with postural movements, walked with a cane, and had reduced range of motion." [DE 21] at 11-12. While

9

Defendant is correct that the foregoing observations and findings do not qualify as medical opinions, Defendant fails to address the one portion of Dr. Adam's statements that does qualify as a medical opinion. That is Dr. Adam's statement that Plaintiff's cane is medically necessary for Plaintiff to walk both short and long distances. This statement directly addresses a restriction in Plaintiff's ability to walk, and as discussed above, walking is a physical demand of work activities. Therefore, Dr. Adam's statement regarding the medical necessity of a cane qualifies as a medical opinion under 20 C.F.R. §§ 404.1513(a)(2) and 416.913(a)(2). *See Mayo v. Kijakazi*, No. CIV-20-1131-AMG, 2020 WL 13134081, at *3-4 (W.D. Okla. Mar. 27, 2022). By failing to treat the statement as a medical opinion and consequently not assess it in accordance with the regulations governing the evaluation of medical opinions, the ALJ erred.[5]

### 2. RFC Between AOD (March 23, 2018) and EOD (August 3, 2020)

An "ALJ must state the grounds for his decision with clarity to enable [courts] to conduct meaningful review." *Morrison v. Comm'r of Soc. Sec.*, 660 F. App'x 829, 834 (11th Cir. 2016) (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)). "A clear articulation of both fact and law is essential to [a court's] ability to conduct a review that is both limited and meaningful." *Owens*, 748 F.2d at 1514-15. "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' [courts] will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Owens*, 748 F.2d at 1516). "In such a situation, 'to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Id.*

---

[5] While there is perhaps a good argument for why the error was harmless, Defendant did not make a harmless error argument, and I decline to make the argument for Defendant (especially given that remand is separately warranted for other reasons discussed below).

(quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)); *see also Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." (citation omitted)); *Momenpour v. Saul*, No. 20-CV-21910, 2021 WL 2828100, at *13 (S.D. Fla. June 21, 2021), *report and recommendation adopted*, 2021 WL 2827184 (S.D. Fla. July 7, 2021) ("An ALJ is required to build an accurate and logical bridge from the evidence to his or her conclusion. . . . The ALJ must also 'sufficiently articulate' his or her assessment of the evidence to assure the court that they have considered the important evidence – so that the court may trace the path of the ALJ's reasoning to his or her conclusion." (quoting *Flentroy-Tennant v. Astrue*, No. 3:07-CV-101-J-TEM, 2008 WL 876961, at *8 (M.D. Fla. Mar. 27, 2008))).

To ensure that meaningful review is possible, an ALJ's RFC analysis must contain "three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). The logical explanation component is just as important as the other two components. *Id.* In other words, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p; *see also Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021); *Harvey v. Soc. Sec. Admin., Comm'r*, No. 22-10281, 2022 WL 17175649, at *2 (11th Cir. Nov. 23, 2022). A function-by-function analysis is necessary. *See* SSR 96-8p; *Pupo*, 17 F.4th at 1065. "[M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas*, 916 F.3d at 311.

Plaintiff contends that the ALJ failed to build a logical bridge between the evidence and the ALJ's conclusion that Plaintiff could perform light work prior to the EOD. As indicated above,

11

the ALJ only reduced Plaintiff to sedentary work on the EOD. That reduction to sedentary is what ultimately led to the ALJ finding that Plaintiff could not perform her past relevant work or other work in the national economy beginning on the EOD. *See* Tr. 22-24. However, because the ALJ found that Plaintiff could perform light work prior to the EOD, the ALJ determined Plaintiff could perform her past relevant work, which requires light work, prior to the EOD. *See* Tr. 19-23.

Relevant here, many "light work" jobs require "a good deal of walking or standing" – though, jobs that involve "sitting most of the time with some pushing and pulling of arm or leg controls" may also fall in the light work category. 20 C.F.R. §§ 404.1567(b), 416.967(b). Plaintiff's past relevant work, however, appears to fall into the "good deal of walking or standing" category of light work. *See* Tr. 463 (indicating that Plaintiff spent far more time walking or standing than sitting when completing her past relevant work). The next category down from "light work" is "sedentary work," which although defined as a job that involves sitting, often requires some walking and standing. 20 C.F.R. §§ 404.1567(a), 416.967(a). "[T]he primary difference between sedentary and most light jobs" is the fact that many light jobs require "a good deal of walking or standing." SSR 83-10. "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Id.* On the other hand, "at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday . . . ." *Id.* In this case, the ALJ appears to have specifically reduced Plaintiff from "light" to "sedentary" on the EOD because it was as of the EOD that the ALJ found Plaintiff to be limited "to only standing and walking for 2 hours during an 8-hour workday, consistent with sedentary exertion level work." Tr. 22.

What is missing from the ALJ's analysis is the logical explanation regarding why, based on the evidence, Plaintiff could perform the requirements of light work, including the

12

walking/standing requirements, prior to the EOD but not after the EOD.  By way of background, in February 2018 (the month before the AOD), an MRI of Plaintiff's lumbar spine indicated, *inter alia*, scoliosis, lumbar spondylosis with facet arthrosis, discogenic disease, and lateralizing disc bulge contributing to mild-to-moderate foraminal narrowing bilaterally at the L5/S1 level.  Tr. 558-59.  The following month (around the AOD), an MRI of Plaintiff's femur, which was taken to help evaluate Plaintiff's complaints of low back pain and right leg pain, revealed evidence of a large effusion, severe advanced degenerative arthritis involving the right hip with joint space narrowing, and femoral head neck marginal osteophytes.  Tr. 551.  Based upon what the MRI revealed, a right hip MRI was recommended.  Tr. 551-52.  Plaintiff underwent the right hip MRI a few days later.  Tr. 545-46.  It revealed:

> 1. Marked osteoarthritis of the right hip. There is diffuse full-thickness chondral loss involving the right acetabulum and femoral head with large subchondral cysts and geodes on both sides [of] the joint, marginal spurring and diffuse subchondral marrow edema.
> 2. Moderate volume right hip effusion with complex debris, synovitis and loose bodies within the right hip joint.
> 3. Mild left hip osteoarthritis.
> 4. Mild bilateral distal gluteus medius insertional tendinosis.
> 5. Mild edema within the right hip adductor muscles may represent a mild strain or may be reactive in nature associated with the right hip osteoarthritis.

Tr. 545-46.

Notwithstanding the MRIs from around the time of the AOD (about 6-7 months before the DLI), the state agency medical consultants who reviewed Plaintiff's file both initially and on reconsideration found that there was insufficient evidence to assess Plaintiff's RFC prior to the DLI; therefore, they did not provide an RFC assessment for the period of time pre-dating the DLI. Tr. 178-79, 187-88, 199-200.  The ALJ found persuasive the consultants' determination that insufficient evidence existed to assess Plaintiff's RFC prior to the DLI.  Tr. 22.  Nonetheless, the ALJ found that the MRIs from around the time of the AOD were "enough to limit the claimant to

13

light exertion level work, showing enough back and hip problems to warrant a light exertion limitation." Tr. 22. Thus, the ALJ appears to have agreed with the consultants that insufficient evidence existed to assess Plaintiff's RFC prior to the DLI; yet, in the same exact sentence of her decision, the ALJ then seemed to say that she could still find there was enough evidence to limit Plaintiff to light work. This does not add up. Moreover, if there was in fact enough evidence to assess the level of work Plaintiff could perform (light, sedentary, etc.), the ALJ does not explain why that evidence only limited Plaintiff to light work and not sedentary work. The absence of a logical explanation frustrates meaningful review.[6]

It is also unclear why the ALJ found Plaintiff could perform light work prior to the EOD but only sedentary work after the EOD. To be clear, it is obvious that the EOD coincides with the consultative examination performed by Dr. Adam. Based on that examination (*see* Tr. 636-42), which found a cane to be medically necessary for walking, and based on right shoulder and right knee scans from a few weeks later (Tr. 644-45), the ALJ found further RFC limitations to be warranted beginning on the EOD. *See* Tr. 22-23. The right shoulder scan revealed "mild acromioclavicular and glenohumeral degenerative change." Tr. 644. The right knee scan revealed "mild tricompartmental degenerative change without acute osseous abnormality. Osteopenia." Tr. 645. So, what changed around the time of the EOD was the introduction of the shoulder and knee scans and the consultative examination. But the logical explanation is lacking for why Plaintiff did not need a cane before the EOD or why the ALJ determined Plaintiff's complaints regarding

---

[6] *Cf. Carr v. Kijakazi*, No. 20-2226, 2022 WL 301540, at *3 (4th Cir. Feb. 1, 2022) ("[T]he ALJ failed to explain how Carr could perform 'light work.' While the ALJ referenced evidence relating to Carr's physical impairments, including his ability to walk, stand, and lift, 'the ALJ never actually explained how he concluded, based on that evidence, that [Carr] could perform the tasks required by 'light work.' Consequently, the ALJ failed to build an 'accurate and logical bridge' from the evidence of Carr's impairments to his conclusion about Carr's ability to work." (internal citations omitted)).

knee pain could not be substantiated prior to the EOD, particularly when Plaintiff underwent MRIs in early 2018 due, in part, to her complaints about knee pain. In other words, as discussed in the prior paragraph, it is unclear from the ALJ's decision why, in the ALJ's view, the 2018 MRIs provided enough evidence to show that Plaintiff could not perform more than light work, but why they did not provide enough evidence to reduce Plaintiff to sedentary work. And it is unclear from the ALJ's decision why the mere introduction of the consultative examination and the August 2020 scans became enough to reduce Plaintiff to sedentary work when the seemingly serious MRIs from early 2018 combined with Plaintiff's allegations and the other evidence were not enough. To be clear, the ALJ's determination may ultimately be reasonable.[7] The problem is that the absence of a logical explanation impedes the Court's ability to ascertain whether the ALJ's RFC determination is supported by substantial evidence.[8]

While remand is warranted for the reasons discussed above, there is also one other wrinkle that adds some further confusion to the ALJ's decision – that is, the ALJ's characterization of the prior administrative findings for Plaintiff's SSI claim at the reconsideration level. By way of background, the only time that a state agency medical consultant assessed Plaintiff's RFC was in

---

[7] I recognize, as Defendant points out, that it was Plaintiff's burden to prove she was disabled. However, as noted above, notwithstanding the somewhat limited objective medical evidence existing prior to the EOD, the ALJ still found there was enough evidence to limit Plaintiff to the light exertional level prior to the EOD. Despite apparently being able to determine from the evidence existing at that time the exertional level at which Plaintiff could perform, the ALJ failed to provide any logical explanation for selecting that exertional level (light) as opposed to some other exertional level (such as sedentary). To the extent the ALJ believed the additional evidence regarding Plaintiff's knee and shoulder made the difference (in reducing Plaintiff to sedentary work only after the EOD), the ALJ did not explain why such additional evidence made the difference. It is the ALJ's lack of explanation that is the issue here because the absence of an adequate explanation makes it difficult to meaningfully review the ALJ's decision.

[8] *Cf. Carr*, 2022 WL 301540, at *4 ("In most cases, the absence of an adequate explanation for an ALJ's determination will 'frustrate meaningful review,' making it 'impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings.'" (internal citations omitted)).

conducting a current evaluation, on August 27, 2020, in connection with Plaintiff's SSI claim at the reconsideration level. *See* Tr. 208-10. In that assessment, the consultant found that Plaintiff was limited to standing and/or walking for a total of 2 hours during an 8-hour workday. Tr. 208. As indicated above, such a limitation generally prevents someone from performing "light work" and would have prevented Plaintiff from performing her past relevant work. In fact, vocational expert testimony confirmed that a limitation to 2 hours of walking/standing translates to sedentary work. *See* Tr. 53-54, 157. Nevertheless, the ALJ incorrectly characterized the limitations assessed by the consultant at the SSI reconsideration level as allowing for light work. *See* Tr. 21 (citing Exhibit 7A). While this error may ultimately be harmless given that the consultant's evaluation was a current evaluation and not a pre-DLI evaluation, it is nonetheless another error that casts doubt on the ALJ's decision, which is already lacking adequate explanation for the reasons discussed above.[9]

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **GRANT** Plaintiff's Motion [DE 20], **DENY** Defendant's Motion [DE 21], and **REMAND** this matter to the Commissioner for further proceedings.

---

[9] As an aside, in addressing Plaintiff's DIB claim at the reconsideration level (where the inquiry was whether Plaintiff became disabled prior to the DLI), the disability adjudicator/examiner indicated in the Assessment of Vocational Factors section that Plaintiff was limited to sedentary work even though the medical consultant who completed the prior administrative medical findings found that there was insufficient evidence to assess Plaintiff's RFC as of the DLI. *See* Tr. 199-202. Thus, the disability adjudicator apparently made a mistake in filling out the assessment. Defendant correctly notes that the disability adjudicator – not the medical consultant – completed the Assessment of Vocational Factors (apparently incorrectly) and that what matters for purposes of the ALJ's review is the prior administrative medical findings of the medical consultant, not the findings of the disability adjudicator. While Plaintiff's Motion overlooked this point, Defendant's argument does not change the fact that the ALJ erred in characterizing the SSI reconsideration prior administrative medical findings as allowing for light work when the findings limited Plaintiff to 2 hours of standing/walking.

16

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Cecilia M. Altonaga, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 28th day of February 2023.

*[signature]*
Jared M. Strauss
United States Magistrate Judge